Bradley J. Stevens – 006723
Jeffrey P. Boshes – 004530
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
The Collier Center, 11ᵗʰ Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5955
Facsimile: (602) 495-2729
bstevens@jsslaw.com

Attorneys for Washington Federal Savings, a
federally-chartered savings and loan association

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| | Case No. 2:09-BK-32244-SSC |
| TIMOTHY RAY WRIGHT, | **WASHINGTON FEDERAL SAVINGS' OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT TO ACCOMPANY THE DEBTOR'S FIRST PLAN OF REORGANIZATION** |
| Debtor. | Date: May 26, 2010 |
| | Time: 11:00 a.m. |
| | Location: 230 N. First Avenue |
| | Courtroom 701, 7ᵗʰ Floor, |
| | Phoenix, AZ |

WASHINGTON FEDERAL SAVINGS ("WFS"), a secured creditor in this Chapter 11 bankruptcy proceeding, by and through its undersigned attorneys, hereby objects to the Debtor's Disclosure Statement to Accompany the Debtor's First Plan of Reorganization ("Disclosure Statement"). The substance of WFS's Objection is set out in the Memorandum of Points and Authorities attached hereto.

DATED this ___ day of May 2010.

JENNINGS, STROUSS & SALMON, P.L.C.

By:___/s/ BJS #006723_____
    Bradley J. Stevens, Esq.
    Jeffrey P. Boshes, Esq.
    201 East Washington Street, 11th Fl.
    Phoenix, Arizona 85004-2385
    Attorneys for Washington Federal
    Savings

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**     **.The Underlying Plan Described by the Disclosure Statement is Patently Unconfirmable Which Must Result in the Court Disapproving the Proposed Disclosure Statement.**

Debtor's Disclosure Statement describes Debtor, an individual real estate entrepreneur, and his goal of being engaged in ambitious and overly aggressive rental property investments. Unfortunately, Debtor's business plan has not yielded cash flow sufficient to support the enormous secured debt Debtor has incurred nor sufficient income to sustain Debtor's lifestyle. The Disclosure Statement reflects that rental income is declining since 2007. (See p. 10). The Disclosure Statement shows that Debtor's adjusted gross income for the tax years 2005 through 2009 has been dramatically and annually decreasing -- $771,125 to $8,228 to <$77,053> to <$1,167.859> to <$1,224,104>, respectively.

Debtor's Schedules and Statements reflect total assets of $40,752,488 against total liabilities of $43,477,695.

Debtor's 160 separate parcels of real property comprise approximately 240 rental units primarily located in Maricopa County, Arizona. Real property values in Arizona have been in a sharp decline over the past five years and loans that were made to Debtor by the 23 secured creditors in this case, which initially were likely fully secured, are now dramatically undersecured. Debtor himself admits in his Liquidation Analysis (see Exhibit E, p. 3) that if the real estate assets were to be liquidated today, the estate would realize a net value of

1  $34,645,946. Comparing that value against the total secured debt of $43,255,355 reveals an
2  admitted shortfall of $8,609,409. Debtor therefore admits that his real estate portfolio is $8.6
3  million underwater.

4  **A.    No Surrender of Properties – Even those Without Equity.**

5  To date, 27 Motions for Relief from the Automatic Stay have been filed by secured
6  creditors. Some of those Motions are filings by the same creditor to obtain stay relief on a
7  single, discreet parcel of real property collateral. Other creditors, like WFS, have filed one
8  consolidated Motion for Stay Relief seeking termination of the automatic stay on multiple
9  properties – in WFS's case, 16 separate real property parcels. (Attached hereto as Exhibit A
10  is chart that outlines the 27 Motions for Stay Relief that have been filed to date which
11  reference 54 separate real properties that are targeted by these Motions.)

12  Incredibly, in spite of all of the Motions for Stay Relief that have been filed, Debtor
13  refuses to acknowledge that the stay should be vacated on any properties that are clearly,
14  significantly and undisputedly underwater. The Debtor has filed repetitive responses to the
15  motions as to properties that are worth less than the debt by alleging the property is in stable
16  condition; the property is leased; the property is indispensable for a effective reorganization;
17  property values will rebound; and/or that the amount of undersecured portion of the debt is
18  nominal.

19  **B.    Improper Classification of Claims.**

20  In order for the Debtor to successfully confirm his Chapter 11 Plan, voting on the Plan
21  must result in at least one accepting, impaired class of creditors consenting to the Plan. To
22  date, there is absolutely no evidence that the Debtor has any creditor support for his Plan. In
23  order to accomplish the insurmountable task of obtaining an impaired accepting class, the
24  Debtor has separately classified each of the 23 secured creditors into its/her/or his own
25  separate class. (See secured creditors set out in Section 3.2 of the Plan at Subsections 3.2.1
26  through 3.2.27.) Such gerrymandering of similarly-situated creditors for whom identical

treatment is being proposed is not an appropriate classification and such classification has been rejected by courts in this circuit.

"[A] debtor cannot classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *See, e.g., In re Barakat*, 99 F.3d 1520, 1526 (9th Cir.1996) (citing *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III)*, 995 F.2d 1274, 1279 (5th Cir. 1991)) (internal citations and quotations omitted). Under *Barakat*, a plan of reorganization cannot treat similarly situated creditors differently unless there is a reasonable legitimate business or economic justification for doing so. *In re Barakat*, 99 F.3d at 1526. Simply put, "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Id.* at 1524 (quoting *In re Greystone III*, 995 F.2d at 1279).

## C.    Unreasonable Treatment of Secured Creditors.

The proposed treatment of the 23 secured creditors with real property collateral is as follows:

After the Effective Date, all Net Cash Collateral will be distributed to the respective 23 secured creditors. Thereafter, the Debtor shall pay monthly interest-only payments at the rate of 3.5% for the first two years after the Effective Date; monthly interest-only payments at the rate of 4% for the next one year; monthly interest-only payments at the rate of 4.5% for the next one year; and monthly interest-only payments at the rate of 5% with a 30 year amortization for the next one year. After the fifth year, *at the sole election of the Debtor*, either the loans secured by first deeds of trust will all be due and payable or the loans shall be deemed fully reinstated at the end of five years *as if no default had occurred*. (See Debtor's Plan at Section 4.2.A).

The Disclosure Statement is fatally flawed on the "adequate information" requirement because it provides no projections or analysis of how Debtor proposes to satisfy even these unreasonably low interest-only payments. There is no spread sheet that shows each creditor's

proposed payments or a total of the payments.

It is inconceivable to WFS that any secured creditor would agree to such unreasonable and unfair treatment of their secured claims. For example, WFS has six separate interest rate amounts that were agreed to between WFS and Debtor at the time its 16 promissory notes were signed. WFS' interest rates range from 6.00% (one loan); 6.125% (one loan); 6.25% (four loans); 6.375% (five loans); 6.50% (two loans); and 6.875% (three loans). Significantly, these interest rates were negotiated pursuant to Debtor's represented financial condition at the time the loans were made and based on real property values as appraised in 2003, 2005 and 2009. If anything, due to the change in the economy and Debtor's defaults, the interest rates under the Plan ought to be at a higher rate than WFS' contracted for rates when Debtor was more credit worthy.

Ironically, Debtor's Disclosure Statement reveals that where the Debtor is a secured lender he has taken a more aggressive approach on setting interest rates. On his 2008 sale of the 6939 E. Hummingbird, Paradise Valley, Arizona property, Debtor's buyers, Dennis M. and Elizabeth J. Danzik, executed a carryback promissory note in the amount of $5,950,000 to Debtor. Interestingly, Debtor set the interest rate on that carryback note at 6% per annum. (See *Disclosure Statement*, p. 39, line 23.) However, when the Debtor is the borrower and needs to repay money to secured creditors, he suggests that 3.5% to 5% interest is reasonable. The Debtor has not provided any justification for the substantial reduction in rates and suspension of principal payments based upon any objective standard or precedent. (See *Disclosure Statement* at Section IV. A.)

### D.     Unsecured Creditor Treatment is Not Feasible or Reasonable.

Debtor's proposed treatment of unsecured creditors is also nonsensical (See Section 4.3.1 of the Plan.) The Debtor proposes to pay unsecured creditors 100% of their allowed claims on or before five years from the Effective Date of the Plan. However, the Debtor will only be paying unsecured creditors 1% of their allowed claims in quarterly payments during

that five year period. In other words, Debtor asserts that he will pay 20 quarters (five years) at 1% per quarter which would be a total of 20% payment to unsecured creditors after five years. This does not equal 100%. Debtor's proposed treatment for unsecured creditors is disingenuous and internally inconsistent. Also, since the vast majority of the secured creditors in this case will hold unsecured deficiency claims, the undersecured creditor claimants will control the voting in this class. Again, it seems clear these creditors will vote to reject the Plan. Finally, this treatment is suspect and unreasonable on its face and causes the underlying Plan to be nonconfirmable.

**E.      The Disclosure Statement Cannot be Approved Given this Patently Unconfirmable Plan.**

As noted at the beginning of this Section, disclosure statements that describe an underlying, unconfirmable plan can not be approved by the court. This is a well-established principle that has been followed by many courts in this circuit.

"It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed." *In re Main St. AC, Inc.,* 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999); *In re Beyond.com Corp.,* 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) ("Because the underlying plan is patently unconfirmable, the disclosure statement may not be approved."); see also *In re O'Leary,* 183 B.R. 338, 338-39 (Bankr. D. Mass. 1995) ("Courts may refuse to approve disclosure statements that describe plans that cannot be confirmed."). Courts adhere to this principle to "prevent diminution of the estate." *In re Percht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986).

These legal holdings apply in the present case. Debtor's Disclosure Statement cannot be approved.

. . .

**II.  The Disclosure Statement Fails to Adequately Describe Numerous Proposed Provisions of Debtor's Plan Which Deficiencies Prevent the Disclosure Statement from Being Approved**.

For the Disclosure Statement to be approved, §1125(a)(1) of the Code requires that it contain "adequate information".  On its face, the Disclosure Statement does not do so in the following areas:

1. The underlying Plan describes a "reserve fund" of $450,000 that will be maintained by the Debtor during the term of the Plan.  An amount of $200,000 is designated as "Summer Reserves".  The other $250,000 is to be set aside for capital improvements. There is nothing in either the Disclosure Statement or the Plan, however, that sets out any calculation or analysis as to how those numbers were derived.  More information must be given about this reserve fund proposal. (See *Plan* at Section 5.2.)

2. The Debtor proposes that he shall have the exclusive authority to sell or refinance individual real properties.  He then makes a blanket statement that the secured creditors "shall be satisfied from such sales or refinancing of individual properties." (See *Disclosure Statement*, p. 27, lines 10-11.)  It is wholly unreasonable and unrealistic for the Debtor to impose unilateral sales or refinancing terms on secured creditors.  Beyond that, the Debtor makes the brash statement that from proceeds of these sales or refinancing, he will pursue "the acquisition of additional individual real properties". (*Id.* at lines 11-12.)  Thus, not only is the Debtor seeking the have the exclusive right to sell or refinance the properties or loans, but he then suggests that he would also be allowed to take the sale proceeds or refinancing proceeds and purchase additional properties.  This proposed course of business dealing would proceed while Debtor forces his secured creditors to take completely unacceptable, minimal interest-only payments, at below market rates. WFS submits that no secured creditor would ever vote in favor of a Plan with these outrageous terms.  Again, this fact renders the Disclosure Statement incapable of being approved. (See *Plan* at Section 6.3.)

3. Debtor sets out a peculiar proposal for defaults. Debtor's Plan at Section 7.4 suggests that "the Debtor may, at [his] option, elect to abandon a specific real property to the holders of the Secured Claims thereon by written notice of such election..." This procedure is called "Election of Abandonment." The Debtor however, also proposes that whenever he elects to abandon a property that the election "shall constitute a waiver of ... the recourse and deficiency rules...under applicable Arizona or California state laws." In other words, Debtor would set up a procedure whereby, at his own election, secured creditors would be forced to abandon and waive all of their further enforcement rights or recourse in deficiency claims to the extent such rights may exist. No secured creditor would vote in favor of such a provision.

4. The Plan at Section 8.3 describes a method by which avoidance claims arising under §§544 through 551 would be assigned to a Creditor's Trust. The Plan at this Section references this Creditor's Trust and it terms as set out in an Exhibit A attached to the Plan. However, no such proposed Creditor's Trust is attached to the Plan. Creditors have no ability to comment on this proposed trust since no draft trust is attached. WFS would have concerns with such an arrangement in any event. How is the trustee of the trust to be appointed? How is the trustee to be compensated? How is the trustee to determine whether to bring an action, settle a claim or abandon rights to pursue claims all together? How are the proceeds from any such litigation to be allocated among the creditors? Further analysis and explanation need to be provided here.

5. Set out as Exhibit E to the Disclosure Statement is Debtor's Liquidation Analysis. The analysis is in narrative format and does not include references to how the data was obtained, the identity of the person who furnished information and any assurance to creditors that the information contained therein is objective and independently verified. On the contrary, throughout the Liquidation Analysis the Debtor is opining as to his position on values, market trends, absorption rates, liquidation values, holding periods and other valuation analyses. WFS submits that the Liquidation Analysis is biased and clearly not

1 objective. The Liquidation Analysis must be replaced with an analysis that reflects objective

2 third party data and facts.

3 **III.   CONCLUSION**.

4      Debtor's Disclosure Statement cannot be approved.   The Disclosure Statement

5 improperly classifies creditors in an attempt at gerrymandering the vote contrary to the

6 Bankruptcy Code and case law; the underlying Plan is not confirmable on its face and the

7 Disclosure Statement cannot therefore be approved; and the Disclosure Statement fails to

8 contain adequate information as required by §1125(a)(1) of the Code which prevents the

9 Disclosure Statement from being approved.

10      WHEREFORE, WFS respectfully urges the Court to enter its order denying approval

11 of the Disclosure Statement; directing Debtor to submit a Disclosure Statement that comports

12 with the legal requirements described herein, if the Debtor is able to do so; and for such other

13 and further relief as the Court deems just and proper.

14      RESPECTFULLY SUBMITTED this 19th day of May, 2010.

15

16                              JENNINGS, STROUSS & SALMON, P.L.C.

17                              By:___/s/ BJS #006723_____
                                   Bradley J. Stevens, Esq.
18                                 Jeffrey P. Boshes, Esq.
                                   201 East Washington Street, 11th Fl.
19                                 Phoenix, Arizona 85004-2385
                                   Attorneys for Washington Federal
20                                 Savings

21

22 **COPIES** of the foregoing emailed
   this 19th day of May 2010
23 to:

24 Howard C. Meyers
   BURCH & CRACCHIOLO, P.A.
25 702 E. Osborn, #200
   Phoenix, AZ 85014
26 Email: hmeyers@bcattorneys.com
   *Counsel for Debtor and Debtor in Possession*

1
Thomas C. Axelsen
2 Sherman & Howard L.L.C.
2800 N. Central Avenue, Suite 1100
3 Phoenix, Arizona 85004-1043
E-mail: taxelsen@shermanhoward.com
4 *Interested Party*

5 John R. Clemency
Janel M. Glynn
6 Gallagher & Kennedy, P.A.
2575 E. Camelback Road
7 Phoenix, AZ 85016
E-mail: janel.glynn@gknet.com
8 *Attorneys for Bank of America, N.A.*

9 Richard G. Himelrick
Tiffany & Bosco, P.A.
10 2525 E. Camelback Road, 3rd Floor
Phoenix, Arizona 85016-4237
11 E-mail: rgh@tblaw.com
*Attorneys for Nicole Hymas*
12
Mark S. Bosco
13 Tiffany & Bosco, P.A.
2525 E. Camelback Road, 3rd Floor
14 Phoenix, Arizona 85016-4237
E-mail: ecf@tblaw.com
15 *Attorneys for J.P. Morgan Mortgage Acquisition Corp;*
*JPMorgan Chase Bank, N.A.; PHH Mortgage Corporation;*
16 *HSBCBank USA, National Association as Trustee for MLCC*
*2007-2;Northern Trust, NA and Bank of Oklahoma, NA*
17
Dean R. Prober
18 Polk, Prober and Raphael
20750 Ventura Blvd., #100
19 Woodland Hills, CA 91364
E-mail: cmartin@pprlaw.net
20 *Attorneys for BAC Home Loans Servicing, LP*

21 Margaret A. Gillespie
Collins, May, Potenza, Baran & Gillespie
22 2210 Chase Tower
201 North Central Avenue
23 Phoenix, AZ 85004-0022
E-mail: mgillespie@cmpbglaw.com
24 *Attorneys for Compass Bank*

25 Jason Sherman
Perry & Shapiro, LLP
26 3300 N. Central Ave., Ste. 2200

3575131v1(60104.11)                          10

1 | Phoenix, AZ 85012-2582
E-mail: ECFNotices@logs.com
2 | *Attorneys for Chase Home Finance, LLC*

3 | Maria Tsagaris, Esq.
McCalla Raymer, LLC
4 | 1544 Old Alabama Road
Roswell,GA 30076-2102
5 | *Authorized Agent for Wells Fargo Bank, N.A.*

6 | Ramesh Singh
GE Money Bank
7 | c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
8 | Miami, FL 33131-1605
E-mail: claims@recoverycorp.com
9 | *Authorized Agent for GE Money Bank*

10 | Renee Sandier Shamblin
Office of the U.S. Trustee
11 | 230 N. First Avenue, Suite 204
Phoenix, AZ 85003
12 | E-mail: renee.s.shamblin@usdoj.gov

13 |

14 | **COPIES** of the foregoing
mailed on the 20
day of May 2010 to:

15 |

16 | U.S. Trustee
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
17 | Phoenix, AZ 85003

18 | Timothy Ray Wright
727 W. University Dr.
19 | Tempe, AZ 85821

20 | Countrywide Home Loans
Customer Service
21 | P.O. Box 5170
Simi Valley, CA 93062-5170

22 |

Chase
23 | Customer Service
 P.O. Box 9176
24 | Coppell, TX 75019-9176

25 | Bank of Oklahoma
P.O. Box 35688
26 | Tulsa, OK 74153-0688

3575131v1(60104.11)

11

1  Merrill Lynch Mortgage Service Center
2  P.O. Box 5459
   Mt. Laurel, NJ 08054-5459
3
   Bank of America
4  P.O. Box 15026
   Wilmington, DE 19850-5026
5
   Bank of America
6  P.O. Box 21848
   Greensboro, NC 27420-1848
7
   Mike Fillian
8  14825 S. 13th Way
   Phoenix, AZ 85048
9

10  /s/ Deborah  Sharp _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**EXHIBIT A**

# LIFT STAY MOTIONS (Rev. 5/18/10)

| Lender | Property | Motion | Objection |
|---|---|---|---|
| MidFirst<br><br>Agreed Stay Relief Order (#211) | 5195 E. Camelback, Phoenix;<br><br>6988 E. Paradise Ranch Road, Paradise Valley | (#89) | Stable; Good Condition; Rent Sequestered; To extent no Equity- Indispensible; Real property arrearage *de minimis* (#134) |
| Johnson Bank<br><br>Order Granting Relief (#261) | Lot at Asher Hills | Property transferred to Helen Dumas on 6/12/09; No monthly Payments made since 7/1/09. (#151) | No Objection filed |
| Northern Trust (Prelim: 5/26/10 at 1:30)(#332) | 9714 N. 71st St. Paradise Valley | No equity Not needed Reorg (#144) | $450,000 cushion Maintained; Good Condition (#170) |
| PHH (4/28/10 Vacated W/o Prej.) | 129 E. Vista Del Cerro | No equity Not needed Reorg (#146) | $25,000 cushion Maintained + Rents Good Condition 3 bdr, 2bath Camelback Corridor (#179) |
| PHH (Prelim: 5/26/10 at 1:30)(#332) | 8702 E. San Daniel, Scottsdale | No equity Not needed Reorg (#148) | $81,200 cushion +Rents McCormick Ranch Master Planned Community (#183) |
| Helen Dumas | 1210 S. Maple | No equity No adequate protection (#158) | Value is stable; Good Condition; Leased; Rents sequestered; Income stream can be used to make payments under plan; 10% shortfall Inconsequential; Will Rebound (#197) |

1

| | | | |
|---|---|---|---|
| Bank of Oklahoma (Prelim: 6/9/10 at 1:30 p.m.) (#407) | 1409 S. Mill | No equity Not needed Reorg (#166) | Value is stable; Good Condition; Rents Sequestered; Once had equity cushion; Will ultimately rebound; Indispensible. (#232) |
| Bank of Oklahoma (Prelim: 6/9/10 at 1:30 p.m.) (#407) | 1204 W. 7th St. | No equity Not needed Reorg (#168) | Value is stable; Good Condition; Rents Sequestered; Once had equity cushion and will ultimately rebound; Indispensible. (#231) |
| TMST (Prelim: 5/26/10 at 1:30 p.m.) (#389) | 425 W. 14th St. | No equity Not needed Reorg (#173) | Lender on Note and Deed of Trust differs (Metrocities vs. MERS); Value is stable; Good Condition; Rents Sequestered; No equity; Will rebound; Indispensible (#234) |
| TMST (Prelim: 5/26/10 at 1:30 p.m.) (#390) | 906 S. Farmer | No equity Not needed Reorg (#175) | Lender on Note and Deed of Trust differs (Metrocities vs. MERS); Value is stable; Good Condition; Rents Sequestered; No equity; Will rebound; Indispensible (#240) |
| TMST (Prelim: 6/9/10 at 1:30 p.m.) (#408) | 924 S. Roosevelt | No equity; Not needed Reorg (#177) | Lender on Note and Deed of Trust differs (Metrocities vs. MERS); Value is stable; Good Condition; Rents Sequestered; No equity; Will rebound; Indispensible (#233) |

3541898v1(60104.11)

| | | | |
|---|---|---|---|
| TMST (Prelim: 6/9/10 at 1:30 p.m.) (#407) | 1215 S. Farmer | No equity; Not needed Reorg (#181) | Lender on Note and Deed of Trust differs (Metrocities vs. MERS) Value is stable; Good Condition; Rents Sequestered; No equity; Will rebound; Indispensible (#239) |
| TMST | 1229 S. Roosevelt | No equity; Not needed Reorg (#330) | Transfer of Note and DOT Questioned; Stable; Good Condition; Will Rebound; Rents Sequestered; 2009 Taxes Paid; Indispensible (#401) |
| TMST | 1320 S. Ash | No equity; Not needed Reorg (#348) | Transfer of Note and DOT Questioned; Stable; Good Condition; Will Rebound; Rents Sequestered; 2009 Taxes Paid; Indispensible (#404) |
| TMST | 528 W. 17th Pl. | No equity; Not needed Reorg (#376) Filed: 5/7/10 | |
| Wells Fargo (Prelim: 5/26/10 at 1:30 p.m.) (#396) | 837 4th Street Encinitas, CA | No equity; Not needed Reorg (#185) | Home Equity LOC; Wells Fargo also has the First lien; Value stable; Good condition; Value Dropped but major Upscale Whole Foods Grocery opening nearby; Debtor has moved to Pay the real property Taxes for 2009; Indispensible (#241) |

3541898v1(60104.11)

| | | | |
|---|---|---|---|
| Chase | 1404 E. Hudson | No equity; Not needed Reorg (#200) | $46,000 Cushion; Rents sequestered; Indispensible (#251) |
| Chase | 513 3rd Street Encinitas, CA | No equity; Not needed Reorg (#222) | Value stable; Good Condition; Admits upside down $131,597; Rents sequestered; Indispensible; Debtor Has filed a Plan; New Upscale Whole Foods Grocery opening nearby (#281) |
| Chase | 520 W. 18th St. | No equity; Not needed Reorg (#224) | $57,504 Cushion; Rents sequestered; Indispensible (#280) |
| Chase | 1031-1033 S. Farmer | No equity; No needed Reorg; (#253) | Value stable; Will rebound when economies are restored to health; Rents sequestered; Good Condition; Debtor moved for authority to pay real property taxes; Indispensible (#314) |
| Chase | 1018 W. 12th Pl. | No equity; Not needed Reorg (#259) | $43,228.70 Cushion; Good condition; Indispensible (#315) |
| Chase | 740 W. 9th St. | No equity; Not needed Reorg (#312) | Value stable; Will Rebound; Rents sequestered; Good Condition; Debtor moved for authority to pay real property taxes; Indispensible (#383) |

4

| | | | |
|---|---|---|---|
| Chase | 3855 S. Mill Ave. | No equity<br>Not needed Reorg<br>(#323) | Value stable; Will Rebound; Rents sequestered; Debtor moved for authority to pay real property taxes; Indispensible (#382) |
| Chase | 1015 S. Farmer | No equity<br>Not needed Reorg<br>(#355) | Value stable; Good Condition; Will Rebound; Rents Sequestered; Paid 2009 Taxes; Indispensible  (#406) |
| Chase | 632 W. 3rd St. | No equity<br>Not needed Reorg<br>(#409)<br>5/18/10 | |
| WFS<br>(Final Hearing: | 828 E. Campus | No equity<br>Not needed Reorg<br>(#242) | Willl Rebound; Good Condition; Indispensible (#297) |
| WFS<br>(Final Hearing: | 913 E. Parkway | No equity<br>Not needed Reorg<br>(#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS<br>(Final Hearing: | 1140 S. Farmer | No equity<br>Not needed Reorg<br>(#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS<br>(Final Hearing: | 1191 S. Maple | No equity<br>Not needed Reorg<br>(#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS<br>(Final Hearing: | 1204 S. Maple | No equity<br>Not needed Reorg<br>(#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS<br>(Final Hearing: | 1208 S. Roosevelt | No equity<br>Not needed Reorg<br>(#242) | Will Rebound; Good Condition; Indispensible (#297) |

3541898v1(60104.11)

| | | | |
|---|---|---|---|
| WFS (Final Hearing: | 1211 S. Ash Ave. | No equity Not needed Reorg (#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS (Final Hearing: | 1226 S. Wilson | No equity Not needed Reorg (#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS (Final Hearing: | 1503 E. Hudson | No equity Not needed Reorg (#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS (Final Hearing: | 900 S. Wilson | No equity Not needed Reorg (#242) | Will Rebound; Good Condition; Indispensible (#297) |
| WFS (Final Hearing: | 115 W. 11th St. | Plan unconfirmable (#242) | Equity; Good Condition; Rents Sequestered (#297) |
| WFS (Final Hearing: | 428 W. Howe | Plan unconfirmable (#242) | Equity; Good Condition; Rents Sequestered (#297) |
| WFS (Final Hearing: | 602 W. Howe | Plan unconfirmable (#242) | Equity; Good Condition; Rents Sequestered (#297) |
| WFS (Final Hearing: | 1432 E. Hudson | Fails *Mellor* test; Plan unconfirmable (#242) | Equity; Good Condition; Rents Sequestered (#297) |
| WFS (Final Hearing: | 1731 S. Marilyn Ann Dr. | Fails *Mellor* test; Plan unconfirmable (#242) | Equity; Good Condition; Rents Sequestered (#297) |

6

| | | | |
|---|---|---|---|
| WFS (Final Hearing: | 4138 E. Mercer | Plan unconfirmable (#242) | Equity; Good Condition; Rents Sequestered (#297) |
| Compass | 700 W. University (19 condos) | No equity Not needed Reorg (#353) Filed 5/3/10 | |
| Compass | 1112 S. Bonnie Ln. | No equity Not needed Reorg (#353) Filed 5/3/10 | |
| Compass | 419 W. 11th St. | No equity Not needed Reorg (#353) Filed 5/3/10 | |
| Compass | 405 W. 11th St. | No equity Not needed Reorg (#353) Filed 5/3/10 | |
| Compass | 1135-1137 Judd St. | No equity Not needed Reorg (#353) Filed 5/3/10 | |
| Compass | 431 W.9th St. | No equity Not needed Reorg (#353) Filed 5/3/10 | |
| Compass | 1230 S. Wilson St. | No equity Not needed Reorg (#353) Filed 5/3/10 | |

7

| Compass | 3620 S. Wilson St. | No equity<br>Not needed Reorg (#353)<br>Filed 5/3/10 |
| --- | --- | --- |
| Compass | 1415 W.7th St. | No equity<br>Not needed Reorg (#353)<br>Filed 5/3/10 |
| Compass | 1421 W. 7th St. | No equity<br>Not needed Reorg (#353)<br>Filed 5/3/10 |
| Compass | 1026 S. Maple | No equity<br>Not needed Reorg (#353)<br>Filed 5/3/10 |
| Compass | 1328 E. Hall St. | No equity<br>Not needed Reorg (#353)<br>Filed 5/3/10 |

3541898v1(60104.11)